Gurpreet Kaur, Esq.
Kaur Legal Group, PC
674 County Square Dr, Suite 305
Ventura, CA 93003
Ph. 805-300-9003; Cell 909-997-4570
Fax: 805-716-6100
E-mail: gurpreetkauresq@gmail.com
*Attorney for Petitioner*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOVEPREET SINGH<br><br>Petitioner,<br>v.<br>MARK BOWEN, Acting-Warden of the Adelanto Detention Center; DAVID J. VENTURELLA, Acting Director of Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States<br><br>Respondents. | Civil Action No.<br><br>**VERIFIED PETITION FOR HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner Singh respectfully petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his ongoing unlawful detention and seeking his immediate release from custody. This case concerns the warrantless seizure and detention of a noncitizen who was lawfully admitted to the United States, had lived openly in this country for nearly nine years, maintained stable employment, possessed employment authorization, had established substantial community ties, and had no criminal history. Without advance notice, without identifying any changed circumstance requiring detention, and without providing any pre-deprivation hearing or opportunity to be heard, Respondents

abruptly deprived Petitioner of his physical liberty.

2. Petitioner is a native and citizen of India. On December 20, 2017, he lawfully entered the United States pursuant to a B-2 nonimmigrant visa. On August 2, 2018, DHS served Petitioner with a Notice to Appear charging him solely under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as a nonimmigrant who remained in the United States beyond the period authorized by his admission.

3. That charge is significant. Petitioner is not alleged to have entered the United States without inspection or admission. Nor was he apprehended while arriving at or near the border. He was lawfully admitted to the United States and, years later, was placed in removal proceedings based upon an alleged visa overstay.

4. For approximately eight years after DHS initiated those removal proceedings, Petitioner continued to live openly in the United States. He established a stable life, maintained employment, possessed employment authorization, and integrated himself into his community. Petitioner has no criminal history.

5. DHS had known Petitioner's immigration status since at least August 2, 2018, when it served the Notice to Appear charging him as a visa overstay. Yet for more than eight years thereafter, Respondents did not contend that Petitioner presented a danger to the community, identify any criminal conduct, or otherwise demonstrate that his immediate incarceration was necessary.

6. On September 17, 2026, at approximately 6:00 a.m., Petitioner was driving to work when an unmarked vehicle pulled him over. Petitioner had committed no traffic violation. Officers wearing masks approached the driver's side of Petitioner's vehicle and demanded identification and information concerning his immigration status.

7. Petitioner cooperated. He produced his driver's license and employment authorization document. Nevertheless, the officers immediately detained him. Petitioner asked why he was being taken

into custody, but the officers provided no meaningful explanation and identified no new circumstance requiring his immediate incarceration.

8. Respondents did not provide Petitioner advance notice that DHS intended to take him into custody. They did not provide him with a pre-deprivation hearing. They did not afford him an opportunity to present evidence concerning his employment, community ties, lack of criminal history, or any other circumstances bearing upon the asserted need for detention. Nor did Respondents provide a neutral decisionmaker an opportunity to determine, before Petitioner's liberty was taken, whether detention was warranted.

9. Instead, after permitting Petitioner to remain at liberty for approximately eight years following the initiation of removal proceedings, Respondents abruptly seized him on his way to work and incarcerated him first, leaving any opportunity to challenge that deprivation until after his physical liberty had already been taken.

10. Petitioner's circumstances are materially different from those addressed by the Board of Immigration Appeals in *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), and *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). *Q. Li* addressed an applicant for admission arrested and detained while arriving in the United States. *Yajure Hurtado* addressed the detention of a person present in the United States without admission under INA § 235(b)(2)(A). Petitioner, by contrast, was inspected and lawfully admitted on a B-2 visa in 2017 and was subsequently charged as removable under INA § 237(a)(1)(B) for remaining beyond his authorized period of admission.

11. The distinction is likewise material to DHS's July 8, 2025 Interim Guidance Regarding Detention Authority for Applicants for Admission. That guidance reflects DHS's position concerning detention under INA § 235(b) of persons treated as applicants for admission. Petitioner does not fit the factual premise underlying that policy: he was admitted to the United States and, since 2018, has been

charged by DHS as a visa overstay under INA § 237(a)(1)(B).

12. More fundamentally, regardless of the statutory provision Respondents now invoke to justify Petitioner's continued custody, the Fifth Amendment did not permit Respondents to extinguish Petitioner's longstanding physical liberty without constitutionally adequate process. Respondents had known Petitioner's immigration circumstances for years. Nothing about Petitioner's status suddenly changed on September 17, 2026, and Respondents have identified no emergency that prevented them from providing notice and an opportunity to be heard before taking him into custody.

13. Petitioner's constitutional injury occurred when Respondents deprived him of his liberty without the process constitutionally required before that deprivation. A post-deprivation custody proceeding cannot restore the liberty that Respondents unlawfully extinguished without prior process or erase the completed constitutional violation.

14. Habeas corpus provides the remedy for unlawful executive detention. Because Petitioner's present custody resulted from a deprivation of liberty imposed without constitutionally adequate pre-deprivation process, Petitioner seeks restoration of the status quo that existed immediately before Respondents' unlawful action: his immediate release from custody.

## **JURISDICTION**

15. This action arises under the Constitution of the United States and the INA, 8 U.S.C. § 1101 *et seq.*

16. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

17. This Court has authority under 28 U.S.C. § 2241 to grant the writ, order Petitioner's release from unlawful custody, and grant such ancillary relief as is necessary to effectuate its habeas jurisdiction.

**VENUE**

18. Venue is proper because Petitioner is detained in Adelanto Detention Facility, which is within the jurisdiction of this District. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States. *See* 28 U.S.C. § 1391(e).

**PARTIES**

19. Respondent Mark Bowen is sued in his official capacity as Acting-Warden of the Adelanto Detention Facility. Respondent Bowen is the physical custodian of Petitioner.

20. Respondent David Venturella is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. Respondent Venturella is a legal custodian of Petitioner and has authority to release him.

21. Respondent Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security. In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the INA, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Mullin is a legal custodian of Petitioner.

22. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice. In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

**STATEMENT OF FACTS**

23. Petitioner Singh is a native and citizen of India.

24. On December 20, 2017, Petitioner lawfully entered the United States pursuant to a valid B-2 nonimmigrant visa.

25. Petitioner was therefore inspected and admitted to the United States. He did not enter

without inspection and was not treated as an arriving alien upon his entry.

26. On August 2, 2018, DHS served Petitioner with a Notice to Appear initiating removal proceedings against him.

27. DHS charged Petitioner under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), alleging that he remained in the United States for a time longer than permitted following his lawful admission.

28. The Notice to Appear did not charge Petitioner as inadmissible under INA § 212(a)(6)(A)(i) for entering without admission or parole.

29. Thus, since at least August 2, 2018, DHS has known both the manner of Petitioner's entry and the immigration violation it alleges against him.

30. Following initiation of removal proceedings, Petitioner continued residing openly in the United States for approximately eight years before his present detention.

31. During that period, Petitioner established substantial ties to the United States, maintained stable employment, possessed employment authorization, and integrated himself into his community.

32. Petitioner has no criminal history. He has never been convicted of, charged with, or arrested for any criminal offense.

33. Prior to September 17, 2026, Respondents did not notify Petitioner that they intended to take him into immigration custody or that any circumstance had arisen requiring his immediate detention.

34. Respondents possessed or could readily obtain Petitioner's identity, immigration history, employment information, and other information necessary to evaluate whether custody was warranted.

35. Respondents therefore had ample opportunity to provide Petitioner notice and an opportunity to be heard before depriving him of his liberty.

36. On September 17, 2026, at approximately 6:00 a.m., Petitioner was driving to work.

37. While Petitioner was traveling to his workplace, an unmarked vehicle pulled him over.

38. Petitioner had committed no traffic violation preceding the stop.

39. Officers wearing masks approached the driver's side of Petitioner's vehicle.

40. The officers requested information concerning Petitioner's immigration status and demanded that he produce identification documents.

41. Petitioner cooperated with the officers and produced his driver's license and employment authorization document.

42. Petitioner did not attempt to flee, evade the officers, interfere with their investigation, or otherwise resist.

43. Despite Petitioner's cooperation, the officers immediately detained him and prevented him from continuing to his workplace.

44. Petitioner asked the officers why he was being detained.

45. The officers did not provide Petitioner with a meaningful explanation for his detention or identify any new circumstance requiring his immediate incarceration.

46. Prior to taking Petitioner into custody, Respondents did not provide Petitioner advance written or oral notice that they intended to deprive him of his liberty.

47. Respondents did not identify before the detention any factual basis establishing that Petitioner posed a danger to the community.

48. Respondents did not identify before the detention any factual basis establishing that Petitioner presented a risk of flight.

49. Respondents did not identify any criminal conduct supporting Petitioner's detention.

50. Respondents did not identify any changed circumstance arising between the initiation of Petitioner's removal proceedings in August 2018 and his arrest in September 2026 that required his immediate incarceration.

51. Respondents did not provide Petitioner an opportunity to present evidence concerning his lack of criminal history, stable employment, community ties, or other circumstances demonstrating that detention was unnecessary.

52. Respondents did not provide Petitioner an opportunity to contest the factual or legal basis for the proposed detention before taking him into custody.

53. Respondents did not provide Petitioner with a hearing before a neutral decisionmaker before depriving him of his physical liberty.

54. Respondents instead seized Petitioner first and left any process for challenging his detention until after his liberty had already been taken.

55. DHS's July 8, 2025 Interim Guidance Regarding Detention Authority for Applicants for Admission represented a change in DHS's interpretation concerning detention under INA § 235(b). The policy concerns persons DHS considers applicants for admission.

56. In *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), the Board addressed an applicant for admission arrested and detained while arriving in the United States and held that such an individual was detained under INA § 235(b) rather than § 236(a).

57. In *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), the Board subsequently held that INA § 235(b)(2)(A) governs an individual present in the United States without admission and that an Immigration Judge lacks authority to grant bond to an individual detained on that basis.

58. Petitioner's circumstances are materially different. Petitioner was inspected and lawfully admitted to the United States on a B-2 visa on December 20, 2017.

59. DHS itself thereafter charged Petitioner as removable under INA § 237(a)(1)(B) based upon his alleged failure to depart following that lawful admission.

60. Petitioner was not apprehended while arriving in the United States, was not charged as an

individual who entered without admission, and was not detained near the border shortly after entry. He was arrested nearly nine years after his lawful admission while driving to his established workplace.

61. Regardless of the statutory detention authority Respondents now invoke, they provided Petitioner no constitutionally adequate process before depriving him of his longstanding physical liberty.

62. Nothing prevented Respondents from providing Petitioner advance notice and a meaningful opportunity to be heard before taking him into custody. Respondents had known Petitioner's immigration status for years, and there was no newly discovered criminal conduct, emergency, or other circumstance requiring detention without prior process.

63. Petitioner remains detained as a direct result of Respondents' decision to incarcerate him without first providing constitutionally adequate procedures.

64. Petitioner's detention has deprived him of his physical liberty, prevented him from continuing his stable employment, and removed him from the community in which he had established his life.

65. Petitioner therefore seeks restoration of the status quo that existed immediately before Respondents' unconstitutional deprivation of his liberty: immediate release from custody.

## STATUTORY FRAMEWORK

66. Congress has authorized the Department of Homeland Security ("DHS") to initiate removal proceedings and, under specified circumstances, to arrest and detain noncitizens during the pendency of those proceedings. See 8 U.S.C. §§ 1225, 1226, 1229a, 1231.

67. Petitioner was lawfully admitted to the United States on December 20, 2017 pursuant to a B-2 nonimmigrant visa. On August 2, 2018, DHS served Petitioner with a Notice to Appear charging him under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as a nonimmigrant who remained in the United States beyond the period authorized by his admission. Petitioner was therefore placed in removal

proceedings as a previously admitted noncitizen charged with overstaying his authorized period of admission.

68. Petitioner's statutory posture is materially different from the circumstances addressed in *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), and *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). Those decisions concern detention under INA § 235(b) of persons treated as applicants for admission. *Yajure Hurtado* expressly addressed a respondent who entered the United States without inspection and was charged as inadmissible under INA § 212(a)(6)(A)(i).

69. Petitioner, by contrast, was inspected and admitted to the United States on a B-2 visa and was subsequently charged as deportable under INA § 237(a)(1)(B) for remaining beyond the period authorized by that admission. Indeed, *Yajure Hurtado* itself recognizes that INA § 236 "generally governs the process of arresting and detaining" noncitizens who are deportable under INA § 237(a).

70. The July 8, 2025 DHS Interim Guidance concerning detention authority for applicants for admission likewise does not alter the historical fact of Petitioner's lawful admission or transform his § 237(a)(1)(B) overstay charge into a charge that he entered the United States without admission.

71. In all events, this Petition presents an independent constitutional challenge to the manner in which Respondents obtained and continue to exercise physical custody over Petitioner. Whatever statutory detention authority Respondents invoke, that authority must be exercised consistently with the Fourth and Fifth Amendments.

72. This Petition does not challenge Congress's general authority to authorize immigration detention or ask this Court to decide the merits of Petitioner's removal proceedings. Rather, Petitioner challenges the constitutionality of the manner in which Respondents seized him and deprived him of his physical liberty without a warrant, without circumstances authorizing a warrantless immigration arrest, and without constitutionally adequate pre-deprivation process.

73. Rather, this case presents a straightforward constitutional question: whether federal officers may stop, seize, and incarcerate an individual without complying with the Fourth Amendment's prohibition against unreasonable seizures and the Fifth Amendment's guarantee that no person shall be deprived of liberty without due process of law.

74. The Immigration and Nationality Act does not exist outside the Constitution. Although Congress has authorized immigration detention in appropriate circumstances, neither the INA nor any regulation promulgated thereunder authorizes federal officers to disregard the constitutional limitations imposed by the Fourth and Fifth Amendments.

75. The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. Those protections apply to civil immigration arrests. See, e.g., Arizona v. United States, 567 U.S. 387, 413 (2012) ("Detaining individuals solely to verify their immigration status would raise constitutional concerns."); INS v. Delgado, 466 U.S. 210, 215 (1984) (recognizing that Fourth Amendment protections apply during immigration enforcement operations).

76. The Fifth Amendment likewise provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has repeatedly recognized that these constitutional protections extend to noncitizens physically present within the United States, regardless of their immigration status. See Zadvydas v. Davis, 533 U.S. 678, 693 (2001); Demore v. Kim, 538 U.S. 510, 523 (2003).

77. Freedom from physical restraint lies at the core of the liberty protected by the Due Process Clause. Zadvydas, 533 U.S. at 690. Before the Government deprives an individual of that liberty, due process ordinarily requires notice and a meaningful opportunity to be heard before a neutral decisionmaker unless extraordinary circumstances make pre-deprivation process impracticable. See Mathews v. Eldridge,

424 U.S. 319 (1976); Fuentes v. Shevin, 407 U.S. 67 (1972); Hamdi v. Rumsfeld, 542 U.S. 507 (2004).

78. Nothing in the Immigration and Nationality Act authorizes Respondents to seize an individual in violation of the Fourth Amendment or to deprive that individual of physical liberty without the procedural protections guaranteed by the Fifth Amendment. Statutory authority to detain, if it exists, does not excuse compliance with constitutional requirements.

79. Accordingly, regardless of the statutory provision Respondents ultimately invoke to justify Petitioner's detention, Respondents were constitutionally required to conduct the seizure and detention in a manner consistent with the Fourth and Fifth Amendments. Petitioner's claims arise from Respondents' failure to comply with those constitutional limitations, not from any dispute concerning the ultimate merits of his removal proceedings.

80. Respondents instead stopped Petitioner without presenting legal process, immediately deprived him of his physical liberty, and incarcerated him without advance notice, without an individualized determination that immediate detention was necessary, and without providing any meaningful opportunity to be heard before the deprivation occurred. Those actions violated the Fourth and Fifth Amendments and render Petitioner's continued detention unlawful under 28 U.S.C. § 2241.

## CLAIMS FOR RELIEF

## COUNT ONE

### Violation of Petitioner’s Procedural Due Process Rights

81. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

82. The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. V.

83. Freedom from physical restraint lies at the core of the liberty protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

84. In determining what process is constitutionally required before the Government deprives an individual of a protected liberty interest, courts balance: (1) the private interest affected by the governmental action; (2) the risk of an erroneous deprivation under the procedures employed and the probable value of additional procedural safeguards; and (3) the Government's interest, including the administrative burdens that additional procedures would impose. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

85. Each of the *Mathews* factors weighs heavily in Petitioner's favor.

86. First, Petitioner's interest in remaining free from physical restraint is among the most fundamental liberty interests protected by the Constitution.

87. Second, the risk of an erroneous deprivation was extraordinarily high because Respondents seized and incarcerated Petitioner without providing advance notice, without making any individualized determination that detention was necessary, and without affording Petitioner any meaningful opportunity to be heard before depriving him of his liberty. The value of additional procedural safeguards—including notice, disclosure of the asserted basis for detention, and an opportunity to respond before a neutral decisionmaker—is substantial.

88. Third, Respondents possessed little, if any, governmental interest in dispensing with constitutionally required procedures. Petitioner had lawfully entered the United States, maintained a known residence, remained continuously employed pursuant to valid employment authorization, established substantial community ties, and had no criminal history. Respondents have identified no emergency, exigent circumstance, or other immediate necessity requiring Petitioner’s summary detention without prior process.

89. Respondents therefore had years in which to evaluate Petitioner's immigration status and determine whether custody was necessary. Yet Respondents have identified no newly discovered criminal conduct, emergency, exigent circumstance, or material change in Petitioner's circumstances that suddenly required his immediate detention on September 17, 2026.

90. Prior to detaining Petitioner, Respondents failed to provide:

a. advance notice that detention was being contemplated;

b. written notice identifying the factual basis for detention;

c. notice of any evidence supporting detention;

d. an individualized determination that detention was necessary;

e. an opportunity to present evidence;

f. an opportunity to contest the proposed detention; or

g. a hearing before a neutral decisionmaker.

91. Instead, on September 17, 2026, at approximately 6:00 a.m., Respondents stopped Petitioner in an unmarked vehicle while he was driving to work. Petitioner had committed no traffic violation.

92. Officers wearing masks approached the driver's side of Petitioner's vehicle and demanded identification and information concerning his immigration status.

93. Petitioner cooperated and produced his driver's license and employment authorization document. Nevertheless, the officers immediately detained him and prevented him from continuing to his workplace.

94. Petitioner asked why he was being detained, but Respondents provided no meaningful explanation and afforded him no opportunity to contest the asserted basis for detention before taking him into custody.

95. Nothing occurring on September 17, 2026, required Respondents to act without prior process. Respondents had known since at least August 2018 that Petitioner had been admitted on a B-2 visa and that DHS alleged he had remained beyond his authorized period of admission.

96. Respondents had therefore possessed the information underlying Petitioner's immigration status for approximately eight years before suddenly taking him into custody.

97. No extraordinary or exigent circumstance made pre-deprivation notice and an opportunity to be heard impracticable.

98. Nor can Respondents cure the absence of constitutionally adequate pre-deprivation process merely by invoking a statutory detention provision after Petitioner's liberty has already been taken. Regardless of the statutory authority Respondents assert for continued detention, the Fifth Amendment independently constrains the manner in which the Government may deprive a person of an established liberty interest.

99. The constitutional violation was complete when Respondents deprived Petitioner of his physical liberty without first providing the constitutionally required process.

100. A subsequent custody or bond proceeding cannot retroactively provide the process that was constitutionally required before the deprivation occurred.

101. By depriving Petitioner of his longstanding physical liberty without constitutionally adequate notice and a meaningful opportunity to be heard before the deprivation, Respondents violated Petitioner's rights under the Due Process Clause of the Fifth Amendment.

102. Petitioner's present detention is the direct and continuing consequence of that unconstitutional deprivation. The appropriate habeas remedy is restoration of the status quo that existed immediately before Respondents' unconstitutional action—Petitioner's immediate release from custody.

**COUNT TWO**

**Violation of the Fourth Amendment**

**Unreasonable Warrantless Seizure and Arrest**

103. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

104. The Fourth Amendment protects persons against unreasonable searches and seizures. Those protections apply to civil immigration enforcement conducted within the United States.

105. On September 17, 2026, at approximately 6:00 a.m., Petitioner was driving to work when officers operating an unmarked vehicle pulled him over.

106. Petitioner had committed no traffic violation, and the officers did not identify any traffic, criminal, or other offense justifying the vehicle stop.

107. Officers wearing masks approached the driver's side of Petitioner's vehicle and demanded identification and information concerning his immigration status.

108. Petitioner immediately cooperated and produced his driver's license and employment authorization document.

109. Petitioner made no attempt to flee, evade the officers, interfere with their investigation, or otherwise resist.

110. Despite Petitioner's cooperation, the officers detained him and prevented him from continuing to his workplace.

111. The officers did not present Petitioner with a judicial warrant or administrative warrant authorizing his arrest.

112. Under 8 U.S.C. § 1357(a)(2), an immigration officer's authority to make a warrantless immigration arrest is limited to circumstances in which the officer has reason to believe that the

individual is in the United States in violation of law and is likely to escape before a warrant can be obtained.

113. Respondents had known Petitioner's identity and alleged immigration violation since at least August 2, 2018, when DHS served him with a Notice to Appear charging him under INA § 237(a)(1)(B).

114. Petitioner had thereafter remained openly in the United States for approximately eight years. He maintained stable employment, possessed employment authorization, established community ties, and had no criminal history.

115. Nothing about Petitioner's conduct on September 17, 2026, suggested that he was likely to escape before an administrative warrant could be obtained. To the contrary, Petitioner was traveling to his established workplace, cooperated with the officers, produced identification upon request, and made no attempt to flee.

116. Respondents had ample time to seek an administrative warrant before September 17, 2026, if they believed Petitioner's arrest was warranted.

117. Respondents nevertheless seized Petitioner without presenting a warrant and without identifying facts establishing that Petitioner was likely to escape before a warrant could be obtained.

118. Respondents likewise failed to identify any independent factual basis justifying the initial vehicle stop. Petitioner had committed no traffic violation and was merely driving to work when officers in an unmarked vehicle stopped him.

119. Petitioner requested an explanation for his detention, but Respondents did not provide a meaningful explanation for the seizure or identify circumstances requiring an immediate warrantless arrest.

120. By stopping and arresting Petitioner without presenting a warrant and, on the facts presently known and alleged herein, without circumstances satisfying the statutory requirements for a warrantless immigration arrest, Respondents subjected Petitioner to an unreasonable seizure in violation of the Fourth Amendment.

121. Petitioner's present physical custody resulted directly from that allegedly unconstitutional seizure. Petitioner therefore seeks habeas relief from his ongoing unlawful detention, including immediate release from custody.

**COUNT THREE**

**Writ of Habeas Corpus**

**28 U.S.C. § 2241**

122. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

123. Petitioner is presently in Respondents' physical custody and is restrained of his liberty.

124. This Court has jurisdiction under 28 U.S.C. § 2241(c)(3) because Petitioner alleges that he is in custody in violation of the Constitution and laws of the United States.

125. Habeas corpus provides a mechanism through which a person in federal custody may challenge the legality of that custody and seek release from unlawful executive detention.

126. As alleged above, Respondents deprived Petitioner of his physical liberty without providing constitutionally adequate pre-deprivation process and obtained physical custody of Petitioner through an allegedly unreasonable warrantless seizure.

127. These violations are not rendered harmless merely because Respondents may provide Petitioner some form of process after his liberty has already been taken. The procedural-due-process

violation alleged in Count One concerns the absence of constitutionally adequate process before Respondents deprived Petitioner of his longstanding physical liberty.

128. Petitioner's continued incarceration is the direct and ongoing consequence of Respondents' challenged actions.

129. A post-deprivation custody or bond hearing cannot retroactively supply the process Petitioner alleges was constitutionally required before Respondents deprived him of his liberty.

130. Nor would such a hearing restore Petitioner to the position he occupied immediately before the challenged deprivation. Before September 17, 2026, Petitioner lived and worked in the community at liberty. Respondents' allegedly unconstitutional conduct altered that status quo by placing him in physical custody without prior process.

131. Petitioner therefore seeks restoration of the pre-deprivation status quo through immediate release from custody.

132. Unless this Court grants habeas relief, Petitioner will continue to suffer the loss of his physical liberty resulting from the constitutional violations alleged herein.

133. Accordingly, Petitioner respectfully requests that this Court issue a writ of habeas corpus directing Respondents to immediately release Petitioner from custody and grant such further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

Wherefore, Petitioner requests this Court to grant the following:

1. Assume jurisdiction over this Petition pursuant to 28 U.S.C. § 2241;

2. Issue a writ of habeas corpus determining that Petitioner's seizure and detention, imposed without constitutionally adequate pre-deprivation process and under the circumstances alleged herein, violate the Fourth and Fifth Amendments to the United States Constitution;

3. Order Respondents to immediately release Petitioner from the custody of the Department of Homeland Security and U.S. Immigration and Customs Enforcement, thereby restoring the status quo that existed immediately before his detention on September 17, 2026;

4. Enjoin Respondents from re-detaining Petitioner based upon the same facts and circumstances underlying his September 17, 2026 detention without first providing constitutionally adequate pre-deprivation process, including notice of the asserted basis for detention and a meaningful opportunity to be heard before a neutral decisionmaker, absent a genuine emergency or other circumstance in which pre-deprivation process is constitutionally impracticable;

5. Award Petitioner his reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, to the extent authorized by law;

6. Retain jurisdiction as necessary to enforce the Court's judgment and effectuate Petitioner's immediate release; and

7. Grant such other and further relief as the Court deems just and proper.

Respectfully,

/s/*Gurpreet Kaur*
Gurpreet Kaur, Esq.
**Kaur Legal Group, PC**

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, and I submit this verification on his behalf. Because Petitioner is detained at the Adelanto Detention Facility and immediate relief is sought, counsel verifies this petition on his behalf pursuant to 28 U.S.C. § 2242. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 22nd day of September, 2026.

/s/ *Gurpreet Kaur*
Gurpreet Kaur, Esq.