**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| LOVEPREET SINGH,<br>Petitioner,<br>v.<br>MARK BOWEN, et al.,<br>Respondents. | Case No. EDCV 26-5551-AS<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

On September 22, 2026, Lovepreet Singh (A# 216-532-319) ("Petitioner"), who is represented by counsel and is an immigration detainee in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") claiming that his arrest on September 17, 2026, and ongoing detention violate the Fourth Amendment, the Due Process Clause of the Fifth Amendment, and the Immigration and Nationality Act ("INA"). (Dkt. No. 1). On September 29, 2026, Respondents filed a Response to the Petition, contending

that Petitioner is lawfully detained under 8 U.S.C. § 1226(a) and thus entitled only to a bond hearing under that provision, and not immediate release. (Dkt. No. 7). Petitioner followed with a Reply on September 30, 2026. (Dkt. No. 8).

For the reasons stated below, the Petition is GRANTED to the extent that Respondents are enjoined from continuing to detain Petitioner unless he is provided an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and all applicable regulations.[1]

**BACKGROUND**

Petitioner is a native and citizen of India who lawfully entered the United States on December 20, 2017, pursuant to a B-2 nonimmigrant visa that was valid until June 19, 2018. (Petition ¶¶ 23-25, Ex. A at 1). On August 2, 2018, he was served with a Notice to Appear charging him as removable under INA section 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). (Petition ¶¶ 26-28, Ex. A at 1). Since then, Petitioner has continued to reside "openly" in the United States while maintaining stable employment (with employment authorization) and integrating himself in the community. (Petition ¶¶ 30-31). He has no criminal history. (Id. ¶ 32).

On September 17, 2026, at about 6 a.m., Petitioner was driving to work when an unmarked vehicle pulled him over, though he had

[1] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 2-5).

committed no traffic violation. (Id. ¶¶ 36-38). ICE officers approached, asked for his immigration status and demanded that he produce identification documents. (Id. ¶¶ 39-40). Petitioner handed over his driver's license and employment authorization. (Id. ¶ 41). The officers immediately took Petitioner into custody, while providing no "meaningful explanation" for this. (Id. ¶ 45). Petitioner had received no prior notice that he would be taken into custody, and he was given no opportunity to challenge the decision. (Id. ¶¶ 33, 46, 51-53). An administrative "Warrant for Arrest of Alien" was subsequently issued, and Petitioner was served with a "Notice of Custody Determination" advising him that he was to be detained pursuant to INA section 236, 8 U.S.C. § 1226, during the pendency of his removal proceedings. (See Response Exs. B-C). Petitioner signed the latter form indicating that he wished to have an immigration judge review the custody determination. (Id. Ex. C). He remains in immigration detention at this time but has not received a detention hearing before an immigration judge. (See Reply at 3).

## DISCUSSION

Petitioner's detention is governed by 8 U.S.C. § 1226(a), under which the government may arrest and detain noncitizens "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); see Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165 (9th Cir. 2026) (holding that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime

of § 1226, not § 1225(b)(2)(A)”); Prieto-Romero v. Clark, 534 F.3d 1053, 1062 (9th Cir. 2008) (“Section 1226(a) on its face authorizes the detention of [noncitizens] during the removal order review process.”). Detention under § 1226(a) is “discretionary” and “provides for release on bond or conditional parole.” Avilez v. Garland, 69 F.4th 525, 530 (9th Cir. 2023).

Accordingly, Petitioner merits an order requiring the government to provide him a prompt bond hearing before an immigration judge pursuant to § 1226(a) and all applicable regulations. To the extent that Petitioner instead seeks immediate release, the present record does not support such relief here. It is true that ordering a post-deprivation bond hearing does not always suffice for immigration detainees subject to § 1226(a). In particular, as district courts in this Circuit have concluded, noncitizens who are re-detained after previously being released on an order of supervision have a right, under the Due Process Clause, to pre-detention notice and a hearing, and a post-deprivation bond hearing is not an adequate remedy for the failure to provide those pre-deprivation procedures; in such cases, therefore, the petitioners are typically granted immediate release from custody. See, e.g., Sompal v. Semaia, 2026 WL 311587, at *4-6 (C.D. Cal. Feb. 3, 2026); Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1166 (C.D. Cal. 2025). But this is not such a case, as Petitioner apparently was not previously released from ICE custody on an order of supervision and had no due process right to a pre-detention hearing, and he otherwise has no due process right to immediate release from detention.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. The Supreme Court has firmly established that "the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 679 (2001); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." (citation omitted)). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690.

Because Petitioner therefore has at least some liberty interest in remaining out of custody, the Due Process Clause requires Respondents to provide him "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). To determine what process he is due, the Court considers the following three factors from Mathews:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved

> and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335.

As to the first factor, Petitioner's private liberty interest is limited, notwithstanding that he has lived and worked in the United States for more than eight years, because it appears he was never expressly determined to merit being out of custody, and the government generally has the authority to arrest and detain noncitizens pending a decision on their removal, under 8 U.S.C. § 1226(a). In this way, Petitioner's situation differs considerably from those noncitizens who were previously detained and then released from immigration custody. The government's decision to release such individuals from custody creates "an implicit promise," upon which that individual may rely, that his or her liberty "will be revoked only if he [or she] fails to live up to the . . . conditions [of release]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972); see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). As Petitioner, it seems, had received no such "implicit promise" or other assurance, his claim to a protected interest in remaining at liberty was more tenuous.

Second, because Petitioner had not previously undergone an assessment of his status or a determination as to whether his release would pose a danger to the community or a flight risk, providing him with a post-detention hearing, rather than a pre-detention hearing (or immediate release), would pose only a low or moderate risk of erroneous deprivation of liberty. See also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1209–10 (9th Cir. 2022) (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous procedural protections, including individualized custody determinations and right to seek additional bond hearings). Again, in this respect Petitioner's situation differs significantly from those who were previously released from detention upon a finding that they do not pose a danger or flight risk. See, e.g., Rivera Larios v. Albarran, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard." (citing Garcia v. Andrews, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Arzate v. Andrews, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025))).

Third, "the government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law,'" and thus in detaining noncitizens to "'increas[e] the chance that, if ordered removed, the [noncitizens] will be successfully removed.'" Rodriguez Diaz, 53 F.4th at 1208

(quoting Demore v. Kim, 538 U.S. 510, 515, 528 (2003)). That interest is naturally greater for noncitizens who present a flight risk while removal proceedings are pending against them. But where Petitioner had not been assessed for flight risk or danger, the government's interest in detaining him at least initially was significant. Cf. Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." (citing Zadvydas, 533 U.S. at 690-91)).

On balance, the Mathews factors suggest that Petitioner was not entitled to a pre-detention hearing, and his due process rights are adequately addressed by a post-deprivation bond hearing pursuant to § 1226(a). See, e.g., Quinonez Herrera v. Mullin, 2026 WL 915184, at *3 (C.D. Cal. Apr. 3, 2026) (petitioner who was not on supervised release when detained failed to demonstrate that due process entitled her to release rather than a bond hearing under § 1226(a)); Okoth v. Kaiser, 2026 WL 45199, at *2 (E.D. Cal. Jan. 7, 2026) (rejecting petitioner's claim that he was entitled to a pre-detention hearing where, unlike in cases involving noncitizens who were re-detained while on supervised release during the pendency of removal proceedings, petitioner had not been previously detained and released on bond).

Additionally, Petitioner does not merit release based on his claim that his warrantless arrest violated the Fourth Amendment or

8 U.S.C. § 1357(a) and applicable regulations. (See Petition at 16-18; Reply at 2-4, 6-9). The remedy for unlawful arrest generally is the suppression of evidence obtained therefrom, not release from custody. See INS v. Lopez-Mendoza, 468 U.S. 1032, 1040-41 (1984); United States v. Garcia-Beltran, 443 F.3d 1126, 1131-32 (9th Cir. 2006); see also Martinez-Medina v. Holder, 673 F.3d 1029, 1033-34 (9th Cir. 2011) (exclusionary rule applies in civil removal proceedings only when the Fourth Amendment violation is egregious). "The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." Lopez-Mendoza, 468 U.S. at 1039; see also Stone v. Powell, 428 U.S. 465, 485 (1976) (noting that "judicial proceedings need not abate when the defendant's person is unconstitutionally seized" (citing Gerstein v. Pugh, 420 U.S. 103, 119 (1975); Frisbie v. Collins, 342 U.S. 519 (1952))); Garcia-Beltran, 443 F.3d at 1132 ("[T]here is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity." (quotation omitted)).[2] Petitioner's unlawful-arrest claim therefore does not entitle him to release from custody. See, e.g., Hernandez v. Facility Administrator, 2026 WL 2525600, at *2–

[2] "Irregularities on the part of the government official prior to, or in connection with, the arrest would not necessarily invalidate later proceedings in all respects conformable to law. 'A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment.'" U.S. ex rel. Bilokumsky v. Tod, 263 U.S. 149, 158 (1923) (citations omitted).

3 (C.D. Cal. Aug. 26, 2026) (although it appeared that immigration detainee's arrest violated 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii), he was not entitled to habeas relief on the claim because "[t]he remedy for an unlawful arrest is typically not the dismissal of a proceeding and not release by way of habeas corpus petition" (citing Lopez-Mendoza, 468 U.S. at 1043; Streeter v. Craven, 418 F.2d 273, 274 (9th Cir. 1969) (per curiam))); Suraj v. Bondi, 2026 WL 507682, at *2 (W.D. Wash. Feb. 24, 2026) ("Suraj's account of his arrest . . . suggests that the ICE agents involved in his apprehension lacked probable cause to detain him and may have violated the law. However, even if his arrest was unlawful, it would not provide a basis for release from custody." (citation omitted)).

**ORDER**

Accordingly, the Court GRANTS IN PART AND DENIES IN PART the Petition (Dkt. No. 1) as follows: (1) the Court GRANTS the Petition to the extent that Respondents are enjoined from continuing to detain Petitioner Lovepreet Singh (A# 216-532-319) unless within seven (7) days he is provided a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and all applicable regulations; and (2) otherwise, the Court DENIES the Petition. Respondents are further ORDERED to file a status report within eight (8) days advising the Court as to whether Petitioner has

received a bond hearing, the outcome of the bond hearing, and Respondents' compliance with the Court's Order

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 2, 2026

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE